### LEA v. NEW HOME SEWING MACH. CO.

(Circuit Court, E. D. New York. June 8, 1905.)

TRADE-MARKS—LICENSE TO USE—VALIDITY.

A contract purporting to license the use of a trade mark or name for a sewing machine is invalid, and will not support an action to recover royalties reserved thereby, where the only thing granted is the right to sell machines made by defendant, with which plaintiff has, and has had, no connection, under a name previously used by him in connection with different machines.

At Law. On motion for judgment on pleadings.

Bushby & Berkeley, for plaintiff.
Charles F. Dane, for defendant.

THOMAS, District Judge. The complaint, among other things, shows: (1) That plaintiff, for many years prior to 1882, sold in foreign countries dry-thread sewing machines labeled "National"; (2) that plaintiff, by his long experience and great care in his sale of said machines, and the expenditure of large sums of money, established a market for said machines bearing such label; (3) that the machines so labeled became widely known as reliable, valuable, and useful articles, and acquired a high reputation as such, and commanded an extensive sale; (4) that such machines so labeled were and are known to the public and to buyers and users by the name of "National," with or without prefix or suffix; (5) that in 1882 the plaintiff licensed the defendant to sell to plaintiff's customers, and all others, said sewing machines, under said name or names and label, and defendant agreed, in consideration thereof, to manufacture and sell said sewing machines to plaintiff's said cus-

tomers and others, with said name, names, or label applied thereto, and to pay plaintiff the sum of 50 cents for each sewing machine bearing said name or label so manufactured and sold by defendant; (6) that from and since 1892 defendant has manufactured and sold machines, under said agreement, to the number of 15,000 annually, but, although often requested to pay the plaintiff pursuant to the agreement, has refused, etc.

It will be observed, so far as the complaint discloses, (1) that the plaintiff never manufactured a machine; (2) that he sold no machines made by a particularized person or at a specified factory; (3) that he sold to defendant no machines, no place of business, nor does it appear that he ever had any; (4) that he granted no exclusive or irrevocable right to sell to plaintiff's customers; (5) that the plaintiff did not agree to forbear selling to such customers, or elsewhere, for a limited time or otherwise; (6) that the plaintiff did not agree to inspect, select, or approve the machines sold; (7) that he did not agree to aid the sale in any manner.

What, then, did he attempt to confer on the defendant? He said in effect to the defendant, "You make machines, stamp them 'National,' sell to persons to whom I am selling and have sold dry-thread machines labeled 'National,' and give me 50 cents on each machine," and to this the defendant agreed. The defendant already had the right to make dry-thread machines; it had the right to sell them to plaintiff's customers. Hence the plaintiff by license attempted only to allow defendant to stamp the word "National" on machines it made and sold. But what did the word "National" stamped on such a machine say to purchasers from the defendant? It assured purchasers that the machines so sold by defendant had been made, selected, or inspected by the plaintiff, or that the plaintiff had some other relation to them that was of value to the purchasers, or that the machines were made or sold by a person or concern with which the plaintiff had to do, or had had to do, or assured that the plaintiff had or had had some similar relation to the machines. In fact, the plaintiff had not, and never had, anything to do with the machines so offered and sold by defendant. The assurance that was given to purchasers when the plaintiff sold to them was intended to be continued, but, as to machines sold under the license, such an assurance would be a falsehood. Neither as to the origin of the article, the place of manufacture, the concern, corporation, firm, or person by whom manufactured, or the transferee thereof, or the connection of the plaintiff therewith, did the label state to purchasers, when used under the license, what it was capable of stating when used by the plaintiff. It was a license to use a stamp, dissociated and stripped of truth and of its former significance, for the purpose of falsely inducing purchasers to believe that what it meant when used by the plaintiff it meant when used by the defendant. At the earlier time the stamp meant that the plaintiff had contributed something of value to the article; at the later time it purported to mean the same thing, but spoke falsely. It is considered that the facts alleged in the complaint do not

show a valid license to use a trade-mark. Falk v. American West Indies Trading Co., 180 N. Y. 445, 73 N. E. 239; Hoxie v. Chaney, 143 Mass. 592, 593, 10 N. E. 713, 58 Am. Rep. 149; Kidd v. Johnson, 100 U. S. 620, 25 L. Ed. 769; Matter of Swezey (N. Y.) 62 How. Prac. 215.

It is understood that the motion for judgment was regarded by counsel upon the argument as properly bringing up the sufficiency of the complaint. The motion is granted, and it becomes unnecessary to consider the demurrer to the affirmative defenses set up in the answer.